IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALICIA OWENS WALKER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 2:20-cv-00978-WKW-SRW |
| | ) | |
| THE MONTGOMERY COUNTY | ) | |
| BOARD OF EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION[1]

**I.   Introduction**

On November 30, 2020, *pro se* Plaintiff Alicia Owens Walker filed this action against Defendants Montgomery County Board of Education (the "Board"), and Dr. Ann Roy Moore, Kim Pitts-Gillis, Dr. John Jonston, and Mary Phelan-Jackson, all in their official and individual capacities. (Doc. 1). Plaintiff brings claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* ("RA"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and 42 U.S.C. § 1983.

Before the court is Defendant Mary Phelan-Jackson's motion to dismiss (Doc. 30). The court ordered Plaintiff to file a response, *see* Docs. 32 and 35, but as of this date, Plaintiff has not done so. Therefore, the court deems Defendant's motion unopposed.[2] Defendant argues that

---

[1] Senior United States District Judge William Keith Watkins referred this action to the undersigned for a decision or recommendation on all pretrial matters pursuant to 28 U.S.C. § 636. (Doc. No. 4).

[2] Although Plaintiff did not file a response, the court will examine the merits of Defendant's arguments to determine whether Defendant has met her burden of showing that Plaintiff has not

Plaintiff's claims against her should be dismissed for the following reasons: (1) Plaintiff's claims under the RA and ADA are not directed at her in either her individual or official capacities, (2) there is no individual liability under either the RA or ADA, (3) Plaintiff's § 1983 claim in Count IV is asserted against Defendant in her official capacity, which is duplicative of her claim against the Board, (4) Plaintiff's § 1983 allegations in Count V fail to state a claim against the Defendant upon which relief can be granted, and (5) Plaintiff cannot obtain injunctive relief from Defendant Phelan-Jackson because Defendant is no longer employed as principal by the Board.

For the reasons set forth below, the court concludes that Defendants' motion is due to be granted and that Plaintiff's claims against this Defendant are due to be dismissed without prejudice.

## II.  **Legal Standard**

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007). The standard for a motion to

---

stated a plausible claim for relief. *See Henry v. Experian Info. Sols., Inc.*, No. 1:19-CV-0679, 2019 WL 11499511, at *2 (N.D. Ga. July 10, 2019), *report and recommendation adopted*, No. 1:19-CV-00679, 2019 WL 11499512 (N.D. Ga. July 30, 2019) ("[D]espite no opposition [to the motion to dismiss] being filed, the Court is obliged to review the record to ensure that Defendant's position is correct."); *Giummo v. Olsen*, 701 F. App'x 922, 924 n.2 (11th Cir. 2017); *Anton v. Nationstar Mortg., LLC*, No. 5:11-CV-2619, 2011 WL 13134196, at *3 (N.D. Ala. Nov. 10, 2011), *report and recommendation adopted*, No. 5:11-CV-2619, 2012 WL 12894011 (N.D. Ala. Jan. 30, 2012) ("Although Plaintiffs did not file a response to the motion does not mean that it is automatically due to be granted; rather, the court is still to review such a Rule 12(b)(6) motion on its merits." (citing *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980) (holding district court's dismissal of action with prejudice based on its determination that defendant's motion to dismiss was "unopposed" due to plaintiff's failure to respond was improper)); *Burns v. SUPERVALU Holdings, Inc.*, No. 1:08-CV-1176, 2009 WL 10687766, at *1 (N.D. Ala. Apr. 23, 2009) ("Even when . . . the Plaintiff does not respond to a motion to dismiss, the district court must address the legal sufficiency of the complaint rather than dismissing it for failure to respond." (citing *Boazman v. Economic Laboratory, Inc.*, 537 F.2d 210, 213-214 (5th Cir. 1976) (finding that it was error for a district court to grant summary judgment based solely upon a failure to respond)); *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991).

dismiss under Rule 12(b)(6) was explained in *Twombly,* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal,* 556 U.S. at 678–79 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.* at 680; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the Court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' … that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,* 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted

3

unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiffs are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 683 (internal editing and citation omitted.).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (A "court may consider a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged. . . . [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]") (citation omitted). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court need not, however, accept legal conclusions couched in the form of factual allegations. *See Diverse Power, Inc. v. City of LaGrange, Georgia*, 934 F.3d 1270, 1273 (11th Cir. 2019) (citing *Twombly*, 550 U.S. at 555).

While *pro se* complaints are liberally construed and are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "that does not give 'a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient

4

pleading in order to sustain an action.'" *Woodroffe v. Fla. Dep't of Fin. Servs.*, 774 F. App'x 553, 554 (11th Cir. 2019) (citation omitted).

### III.     Factual Background[3]

Plaintiff is a mathematics teacher for the Montgomery Public Schools at Brewbaker Middle School. (Doc. 1, at ¶ 1). According to Plaintiff, she has a medical diagnosis of severe asthma, which causes her breathing to be restricted and which can be exacerbated depending on her environment. *Id*. at ¶ 5. Plaintiff was diagnosed with severe asthma before the incidents giving rise to her complaint. *Id*. On August 30 and September 3, 2019, Plaintiff emailed Defendant Mary Phelan-Jackson, at that time the principal of Brewbaker Middle School, to inform her that Plaintiff had a health condition that restricts and limits her breathing, and requested a room change because her room had black mildew and mold, which exacerbated her health condition. *Id*. at ¶¶ 6-7. Plaintiff did not receive a response, but she states that without notice she was moved about a week after her second email. *Id*. at ¶ 7.

On September 12, 2019 at 2:30 p.m., Plaintiff took her class to the school gymnasium for a school pep rally. *Id*. at ¶ 8. According to Plaintiff, because the gym was "sweltering hot," she stood in the breezeway in front of the gym where she could see her class. *Id*. Plaintiff alleges that Defendant instructed her to go into the gym to monitor her class. *Id*. Plaintiff told Defendant that she could not breathe in the gym and that the gym's heat made her feel like she was about to pass out. *Id*. at ¶ 9. Plaintiff alleges that Defendant told her either to go into the gym and monitor her class or "go to the office and take a whole day." *Id*. at ¶¶ 10-11. Plaintiff elected to stand in the doorway of the gym so that she could feel some air while monitoring her class. *Id*. at ¶ 12. Plaintiff

---

[3] These facts are gleaned exclusively from the allegations in the complaint and any documents that are attached thereto or referenced in the complaint and are central to Plaintiff's claim. They are the operative facts for the purposes of the court's ruling on the motion to dismiss.

alleges that she witnessed Defendant allow two other teachers to leave the gym that day. *Id*. at ¶ 16. Plaintiff subsequently submitted an incident report via Defendant's mailbox, to which Defendant responded that Plaintiff had submitted the wrong form. *Id*. at ¶ 15. Defendant also informed Plaintiff that, instead of Plaintiff's having to endure the gym's temperature and condition, Plaintiff could have allowed one of her colleagues to take her class to the gym while Plaintiff remained in her classroom. *Id*. Plaintiff alleges that she sent multiple emails thereafter to Defendant to obtain the correct incident form, but that Defendant never responded to her email. *Id*. at ¶ 17.

Plaintiff states that on September 26, 2019, she was teaching her class and became so overheated that she thought she "would have an asthma attack or pass out." *Id*. at ¶ 18. Plaintiff stood in a chair and, leaning over the windowsill, pushed open a window in order to get some air to breathe. *Id*. Plaintiff then went to the front of the room and sat down, but upon standing again, she collapsed. *Id.* After Plaintiff was attended to by paramedics, the assistant principal instructed her to go home. *Id*. at ¶ 22. The next day, upon Plaintiff's return to work, Defendant had Plaintiff see a counselor to answer questions as to whether she was trying to harm myself or had thoughts of harming others. *Id*. at ¶ 23. Plaintiff was not allowed to teach her students that day. *Id*. Plaintiff alleges that she was "labeled 'suicidal' by the actions and comments of" Defendant; "[o]ffensive remarks were made in front of [her] colleagues and parents of students that [she] was a 'crazy lady' who 'tried to jump out the window,'" which "were made and circulated throughout the Board by [Defendant];" that students referred to her as "crazy" and said that "she tried to kill herself"; and that when she returned to school the week of September 30, 2019, she became overwhelmed by Defendant's remarks that Plaintiff had attempted to commit suicide. *Id*. at ¶¶ 24-26. According to

Plaintiff, the Board, Defendant, and others required her to attend three appointments with a licensed counselor. *Id*. at ¶¶ 30-31.

At a pep rally on October 3, 2019, Plaintiff chose to send half of her class with one teacher and the other half with a second teacher to the pep rally. *Id*. at ¶ 32. Plaintiff was subsequently summoned by the assistant principal to meet with Defendant who inquired where Plaintiff's students were. *Id*. at ¶¶ 33-35. Plaintiff informed Defendant of her arrangement with the other two teachers, to which Defendant responded that Plaintiff should be with her class. *Id*. at ¶¶ 35-36. Plaintiff reminded Defendant about Plaintiff's medical condition, which prevented her from being in the gym. *Id*. at ¶ 37. When asked if she had documentation of a medical condition, Plaintiff said that she did not have such documentation with her at that time. *Id*. Plaintiff also told Defendant that she had arranged for her class to go with the other teachers so that she could remain in her classroom based upon Defendant's September 12, 2019 email, which suggested such an alternative. *Id*. at ¶ 38. Despite Plaintiff's protest that going to the gym would exacerbate her health condition, Defendant insisted that Plaintiff go to the gym to be with her students. *Id*. at ¶ 39.

Plaintiff went to the gym and stood close to the open doors where other teachers were standing and also where she could see her students. *Id*. at ¶ 40. Defendant arrived at the gym and instructed all of the teachers standing by the gym doors to step into the gym so that she could close the doors. *Id*. at ¶ 41. Defendant then pushed the door close, causing the door to hit Plaintiff in the back. *Id*. at ¶ 42. Plaintiff alleges that on the following day she sought medical care because of the "extreme pain on [her] entire left side, affecting [her] neck, back, and shoulder," which was caused by the door's hitting her in the back. *Id*. at ¶¶ 46-48. As a result of this injury, Plaintiff took medical leave. *Id*. at ¶ 48.

In her complaint, Plaintiff alleges that she was denied a reasonable accommodation in violation of the RA and ADA; that she was harassed on the basis of her disability in violation of the ADA; and that she was discriminated against on the basis of her disability with respect to the terms and conditions of her employment in violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

## IV.   Analysis

### A.   RA and ADA Claims

Plaintiff asserts claims under the RA and ADA in Counts I-III. (Doc. 1, at ¶¶ 52-63, 64-74, 75-98). A plaintiff cannot seek monetary damages against a defendant in his or her individual capacity as "there is no individual capacity liability under . . . the ADA or RA." *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005); *Berkery v. Kaplan*, 518 F. App'x 813, 814-15 (11th Cir. 2013); *Williams v. Fulton Cty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1139-40 (N.D. Ga. 2016). Accordingly, Plaintiff's RA and ADA claims against Defendant in her individual capacity are due to be dismissed.

### B.   Section 1983 Claims in Official Capacity

In Count IV of the complaint, Plaintiff asserts her § 1983 claim for violation of her Fourteenth Amendment Equal Protection rights specifically against "the Board, and the individual Defendants in their official capacities." (Doc. 1, at ¶¶ 100, 101). In addition to seeking compensatory damages in Count IV, Plaintiff also seeks declaratory and injunctive relief. *Id*. at 21.

Plaintiff also sues the Montgomery County Board of Education. Because Plaintiff has named the Board as a defendant in this action, Plaintiff's claims against Defendant in her official capacity are redundant and are therefore due to be dismissed. *Howell v. Baldwin Cty. Bd. of Educ.*,

8

No. 1:20-CV-502, 2021 WL 6050452, at *4 (S.D. Ala. July 27, 2021); *see Cotrell v. Chickasaw City Sch. Bd. of Educ.*, No. CV 16-503, 2017 WL 562420, at *6 (S.D. Ala. Jan. 23, 2017), *report and recommendation adopted*, No. CV 16-503, 2017 WL 561335 (S.D. Ala. Feb. 10, 2017); *May v. Mobile Cty. Pub. Sch. Sys.*, No. CIV.A. 09-00625, 2010 WL 3039181, at *2 (S.D. Ala. July 13, 2010), *report and recommendation adopted*, No. CIV.A. 09-00625, 2010 WL 3039627 (S.D. Ala. Aug. 4, 2010) ("To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are redundant of the claims against the Board and due to be dismissed."); *Walton ex rel. R.W. v. Montgomery Cty. Bd. of Educ.*, 371 F. Supp. 2d 1318, 1324 (M.D. Ala. 2005) ("The claims against the individual Defendants in their official capacities are redundant of the claims against the Board."); *Katherine S. v. Umbach*, No. CIV.A. 00-T-982-E, 2002 WL 226697, at *18 (M.D. Ala. Feb. 1, 2002) ("When individual school administrators are sued in their official capacities, they are considered officers of the board of education."); *Godby v. Montgomery Cty. Bd. of Educ.*, 996 F. Supp. 1390, 1403 (M.D. Ala. 1998) (holding that § 1983 claims "against officers in their official capacity are 'functionally equivalent' to claims against the entity that they represent" and noting that retaining the suit against the superintendent, principal, and teachers "in their official capacity and as one against the MCBOE would be 'redundant and possibly confusing to the jury'") (quoting *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)).

Plaintiff's claims for injunctive and declaratory relief against Defendant in her official capacity are also due to be dismissed. Plaintiff alleges that Defendant "*was* . . . the Principal of Brewbaker Middle School" and, unlike the other individual defendants named in her complaint, she does not list Defendant's address as 307 South Decatur Street, Montgomery, AL 36104. (Doc. 1, at ¶¶ 3-6) (emphasis added). Plaintiff does not allege that Defendant, as the former principal, is in the position to grant the requested relief, nor can Plaintiff seek relief from a Defendant who

lacks the power to grant such relief. *See Jones v. City of Birmingham*, No. 2:19-CV-01122, 2019 WL 6618292, at *4, n.7 (N.D. Ala. Dec. 5, 2019) ("[T]he litigant must allege that the state actor defendants are capable of granting the requested injunctive and declaratory relief.") (citing *Ingram v. Buford City Sch. Dist.*, No. 1:18-CV-03103, 2018 WL 7079179 at *6-7 (N.D. Ga. Dec. 17, 2018) (dismissing official capacity claims where plaintiff failed to plead defendants could grant the injunctive relief she sought) and *Murray v. Birmingham Board of Education*, No. 2:13–CV–822, 2013 WL 5923725 at *1-2 (N.D. Ala. Oct. 31, 2013) (finding plaintiff could not bring claims against defendants who lacked the power to provide relief)).

      C.    **Section 1983 Claims in Individual Capacity**

In Count V of her Complaint, Plaintiff alleges that Defendant, along with the other individual Defendants in their individual capacities, "intentionally and wrongfully discriminated against [Plaintiff] on the basis of [her] disability and other terms and conditions of employment" in violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (Doc. 1, at ¶¶ 105, 106). Specifically, Plaintiff alleges that "Defendants refused to grant [her] request for accommodation," *id.* at ¶ 105, and that "[Defendants] purposefully deprived [her] of clearly established federal statutory and constitutional rights by subjecting [her] to intentional and unlawful discriminatory practices based upon [her] disability," *id.* at ¶ 106. Defendant contends that Count V fails because it does not implicate the Equal Protection clause of the Fourteenth Amendment, as Plaintiff does not allege that Defendant or any other individual Defendant discriminated against her because of her membership in a constitutionally protected class, and because Plaintiff cannot pursue her claim in Count V as a "class-of-one" employment claim as such claims are not recognized in the law. (Doc. 34, at 6-7).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Equal protection jurisprudence is typically concerned with governmental classification and treatment that affects some discrete and identifiable group of citizens differently from other groups." *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012). "The Equal Protection Clause requires the government to treat similarly situated persons in a similar manner." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). "A plaintiff can allege an equal protection violation in two ways. She may assert a class-based claim by alleging that she received differential treatment by the government because of membership in a protected class." *Euwema v. Osceola Cty.*, No. 620CV1375ORL37DCI, 2021 WL 2823443, at *4 (M.D. Fla. Jan. 11, 2021) (citing *Jones v. Helms*, 452 U.S. 412, 424 n. 23 (1981)); *Alford v. Consol. Gov't of Columbus, Ga.*, 438 F. App'x 837, 839 (11th Cir. 2011) ("In a traditional employment case brought under the Equal Protection Clause, an employee asserts that he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin."); *N.R. by Ragan v. Sch. Bd. of Okaloosa Cty.*, Fla., 418 F. Supp. 3d 957, 985 (N.D. Fla. 2019) ("In order to state an equal protection claim, the plaintiff must . . . show that the state treated him differently than other similarly situated persons based on his or her membership in an identifiable group or class of persons."); *Harris v. Atlanta Indep. Sch. Sys.*, No. 1:07-CV-2086, 2009 WL 10665027, at *13 (N.D. Ga. Aug. 9, 2009). The second way is, "if the plaintiff is not a member of a protected class, she may a bring a 'class of one' claim by alleging 'she has been intentionally treated differently from others similarly situated and that there is no rational basis for

11

the difference in treatment.'" *Id*. (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009)); *Alford*, 438 F. App'x at 839 ("In a 'class of one' equal protection claim, however, a plaintiff does not allege discrimination against a protected class or on account of membership in a particular group, but rather, asserts that he has been treated differently from others similarly situated for arbitrary or irrational reasons."); *Harris*, 2009 WL 10665027, at *13 (noting that the second way as "those cases in which a plaintiff alleges that he was irrationally singled out as a class of one, *i.e.*, he does not allege discrimination on the basis of being in an identifiable class").

Because Plaintiff's complaint does not allege that she was discriminated against because she is a member of a constitutionally protected class, Plaintiff has failed to allege an Equal Protection claim based on Defendant's treatment of a specific class. *See Burks v. Coastal Alabama Cmty. Coll.*, No. CV 1:20-00069, 2020 WL 3405236, at *4 (S.D. Ala. June 19, 2020). If Plaintiff is attempting to allege a "class of one" employment claim based upon her disability, Plaintiff's claim is due to be dismissed because such a claim is not recognized. In *Alford*, 438 F. App'x 837, the Eleventh Circuit explained as follows:

> The Equal Protection Clause of the Fourteenth Amendment generally requires government entities to treat similarly situated individuals alike. *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir.2006). In a traditional employment case brought under the Equal Protection Clause, an employee asserts that he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin. *See Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 594-95 (2008); *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir.2006) (noting a plaintiff typically must allege that he was treated differently "based on race, religion, national origin, or some other constitutionally protected basis" to establish an equal protection claim). In a "class of one" equal protection claim, however, a plaintiff does not allege discrimination against a protected class or on account of membership in a particular group, but rather, asserts that he has been treated differently from others similarly situated for arbitrary or irrational reasons. *See Engquist*, 553 U.S. at 595-97, 128 S.Ct. 2146; *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir.2009).

> In *Engquist*, a state employee alleged she had been effectively laid off for "arbitrary, vindictive, and malicious reasons." 553 U.S. at 594-95, 128 S.Ct. 2146. Without qualification or expressed limitation, the Supreme Court broadly held "such a 'class-of-one' theory of equal protection has no place in the public employment context." *Id*. at 594, 128 S.Ct. 2146. The Court concluded that, while "the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently," it has no application when "government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Id*. at 605, 128 S.Ct. 2146.

*Id*. at 839-40; *Burks v. Coastal Alabama Cmty. Coll.*, No. CV 1:20-00069, 2020 WL 3405236, at *4 (S.D. Ala. June 19, 2020) (where the plaintiff alleged that she was terminated because her disability prohibited her from adequately performing her job without accommodations and her requests for accommodations were denied, the court found that to the extent she was attempting to allege a class-of-one employment claim because of her disability, such a claim was not recognized, citing *Alford*, 438 F. App'x at 839-40); *Harris*, 2009 WL 10665027, at *13 (finding plaintiff's § 1983 disability discrimination claims were analogous to class of one claims which were precluded by *Engquist*). Accordingly, for these reasons, Plaintiff's Equal Protection claim is due to be dismissed.

As to Plaintiff's request for injunctive relief against Defendant in her individual capacity, this claim for relief is also due to be dismissed for the same reasons discussed in Section IV B of this recommendation.

Given that Plaintiff is proceeding *pro se* and must be given an opportunity to amend the complaint before the court dismisses the action with prejudice, and the fact that a scheduling order has not been entered in this action, the court concludes that Plaintiff's claims against this Defendant are due to be dismissed without prejudice. *See Carter v. HSBC Mortg. Services, Inc.*, 622 F. App'x 783, 786 (11th Cir. 2015) ("A *pro se* plaintiff, however, '*must* be given at least one chance to

13

amend the complaint before the district court dismisses the action with prejudice,' at least where a more carefully drafted complaint might state a claim.") (emphasis in original); *but see Shabazz v. Bank of Am.*, No. 1:10-CV-0813, 2010 WL 11647333, at *15 (N.D. Ga. Oct. 26, 2010), *report and recommendation adopted*, No. 1:10-CV-0813, 2010 WL 11647469 (N.D. Ga. Nov. 29, 2010) ("Dismissal with prejudice is proper, however, if the *pro se* plaintiff has indicated that she does not wish to amend her complaint or if a more carefully drafted complaint could not state a valid claim." (citing *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010))).

## V. Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that Defendant's motion to dismiss (Doc. 30) be GRANTED and that Plaintiff's claims against this Defendant be DISMISSED WITHOUT PREJUDICE. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before February 8, 2022. Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the magistrate judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE, on this the 25th day of January, 2022.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge