IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALICIA OWENS WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-978-WKW-CWB |
| | ) |
| THE MONTGOMERY COUNTY | ) |
| BOARD OF EDUCATION, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.     Introduction**

Alicia Owens Walker, *pro se*, commenced this action on November 30, 2020 against the Montgomery County Board of Education (the "Board") and Dr. Ann Roy Moore, Kim Pitts-Gillis, and Dr. John Johnston (the "Individual Defendants"), who were named in both their official and individual capacities.[1] (Doc. 1).  Plaintiff asserts claims under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("RA"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), and 42 U.S.C. § 1983.

Now pending for resolution are (1) the Individual Defendants' Motion for Judgment on the Pleadings (Doc. 48) and (2) the Board's Motion for Judgment on the Pleadings (Doc. 52).  For the reasons set out below, the undersigned Magistrate Judge concludes that the motion filed by the Individual Defendants is due to be granted in its entirety and that the motion filed by the Board is due to be granted in part and denied in part.

---

[1] Plaintiff also named Mary Phelan-Jackson as a defendant in her official and individual capacities (Doc. 1); however, all claims against Phelan-Jackson were dismissed without prejudice by Order entered February 10, 2022 (Docs. 39 & 40).

1

## II.  Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) ("The standards for reviewing decisions on motions to dismiss and motions for judgment on the pleadings are the same: whether the count stated a claim for relief.") (internal quotations omitted).  To determine whether a claim for relief has been stated, the court reviews the complaint under the familiar standard of Fed. R. Civ. P. 8(a)(2), *i.e.,* the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint therefore "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).  "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office for Escambia County*, 592 F.3d 1237, 1255 (11th Cir. 2010) (quoting *Andrx Pharm., Inc. v. Elan Corp.*, 421 F.3d 1227, 1232–33 (11th Cir. 2005)); *see also Perez*, 774 F.3d at 1335.

While *pro se* complaints are liberally construed and are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "that does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Woodroffe v. Fla. Dep't of Fin. Servs.*, 774 F. App'x 553, 554 (11th Cir. 2019) (internal quotation omitted).

### III. Factual Background[2]

Plaintiff is a certified teacher for the Montgomery Public Schools in Montgomery Alabama. (Doc. 1 at p. 3, ¶ 1). Before the incidents giving rise to the Complaint, Plaintiff was diagnosed with severe asthma, which causes her breathing to be restricted and which can be exacerbated depending on her environment. (*Id*. at p. 4, ¶ 5). On August 30, 2019 and September 3, 2019, Plaintiff emailed Mary Phelan-Jackson (who was then the principal of Brewbaker Middle School) to inform her that she suffers from a health condition that restricts and limits her breathing and to request a classroom change on the basis that the health condition was being exacerbated by black mildew and mold in her current classroom. (*Id*. at p. 4, ¶¶ 6-7). Plaintiff did not receive a response but subsequently discovered that her belongings had been moved to a different classroom. (*Id*. at p. 4, ¶ 7).

On September 12, 2019 at approximately 2:30 p.m., Plaintiff took her students to the school gym for a pep rally. (*Id*. at p. 4, ¶ 8). According to Plaintiff, the gym was "sweltering hot" and she therefore stood in the breezeway where she could still see her students. (*Id*.). When Phelan-

---

[2] The facts as stated herein are taken exclusively from the allegations in the Complaint and serve as the operative facts for evaluating the defendants' motions for judgment on the pleadings. *See Perez*, 774 F.3d at 1335. The same facts were recited in the Report and Recommendation of the Magistrate Judge entered on January 25, 2022 (Doc. 39) and adopted by Order entered on February 10, 2022 (Doc. 40). The undersigned specifically notes that Plaintiff did not file any objections to the prior statement of facts.

Jackson instructed Plaintiff to go into the gym to monitor her students, Plaintiff responded that she could not breathe in the gym and that the heat made her feel like she was going to pass out. (*Id*. at p. 5, ¶ 9). Phelan-Jackson then directed Plaintiff to either go into the gym and monitor her students or "go to the office and take a whole day." (*Id*. at p. 5, ¶¶ 10-11). Plaintiff elected to follow Phelan-Jackson's instructions by standing in the doorway of the gym to watch her students. (*Id*. at ¶ 12). Plaintiff alleges that she personally witnessed Phelan-Jackson allow two other teachers to leave the gym during the pep rally. (*Id*. at p. 5, ¶ 16).

Plaintiff submitted an incident report via Phelan-Jackson's "mailbox" later the same afternoon, to which Phelan-Jackson responded by informing Plaintiff that she had submitted the wrong form. (*Id*. at p. 5, ¶ 15). Phelan-Jackson further informed Plaintiff that instead of enduring the temperature and conditions in the gym during pep rallies, she could allow one of her colleagues to take her students to the gym while she remained in the classroom. (*Id*.) Plaintiff alleges that she sent multiple emails to Phelan-Jackson requesting the correct form to submit but that Phelan-Jackson never responded. (*Id*. at p. 6, ¶ 17).

On September 26, 2019, Plaintiff became so overheated while teaching in her classroom that she thought she "would have an asthma attack or pass out." (*Id*. at p. 6, ¶ 18). In order to get air, Plaintiff stood in a chair, leaned over the windowsill, and pushed open a window. (*Id*.). Plaintiff next went to the front of the classroom and sat down but, upon standing again, collapsed. (*Id*.). After being evaluated by paramedics, Plaintiff was instructed to go home. (*Id*. at p. 6, ¶ 22). When Plaintiff returned to work the next day, Phelan-Jackson directed her to speak with a counselor and answer questions as to whether she was trying to harm myself or had thoughts of harming others. (*Id*. at p. 6, ¶ 23). Plaintiff alleges that she was "labeled 'suicidal' by the actions and comments" of Phelan-Jackson, that "[o]ffensive remarks were made in front of [her]

colleagues and parents of students that [she] was a 'crazy lady' who 'tried to jump out the window,'" which "were made and circulated throughout the Board by Principal Jackson," that students referred to her as "crazy" and said that "she tried to kill herself," and that she became overwhelmed by Phelan-Jackson's remarks that she had attempted to commit suicide. (*Id*. at p. 7, ¶¶ 24-26). In total, Plaintiff was required to attend three appointments with a licensed counselor following the classroom incident. (*Id*. at p. 8, ¶¶ 30-31).

On the afternoon of October 3, 2019, Plaintiff arranged to send half of her students to the pep rally with one teacher and the other half with a second teacher so that she could avoid exacerbating her asthma in the gym. (*Id*. at p. 8, ¶ 32). When Plaintiff was questioned by Phelan-Jackson as to where her students were (*Id*. at pp. 8-9, ¶¶ 33-35), she informed Phelan-Jackson of her arrangement with the other two teachers—to which Phelan-Jackson responded that Plaintiff should be with her students (*Id*. at pp. 8-9, ¶¶ 35-36). Plaintiff then reminded Phelan-Jackson about her medical condition (*Id*. at p. 9, ¶ 37) and stated that she had arranged for her students to go to the gym with the other teachers based upon Phelan-Jackson's September 12, 2019 email. (*Id*. at pp. 8-9, ¶ 38). Despite Plaintiff's explanation and protest, Phelan-Jackson insisted that Plaintiff go to be with her students in the gym. (*Id*. at p. 9, ¶ 39).

Plaintiff at that point went to the gym and stood close to the open doors where other teachers were standing and from where she could see her students. (*Id*. at p. 9, ¶ 40). Phelan-Jackson thereafter instructed all of the teachers to step into the gym so that she could close the doors. (*Id*. at p. 9, ¶ 41). Phelan-Jackson then pushed the doors closed, causing a door to hit Plaintiff in the back. (*Id*. at p. 9, ¶ 42). Plaintiff alleges that she sought medical treatment the following day because of "extreme pain on [her] entire left side, affecting [her] neck, back, and

5

shoulder," which was caused by being hitting with the door. (*Id*. at p. 9, ¶¶ 46-48). As a result of her injury, Plaintiff also had to take medical leave. (*Id*. at p. 9, ¶ 48).

In her complaint, Plaintiff alleges that she was denied a reasonable accommodation in violation of the RA and ADA (Counts I and II, respectively), that she was harassed on the basis of her disability in violation of the ADA (Count III), and that she was discriminated against on the basis of her disability in violation of 42 U.S.C. § 1983 (Counts IV and V).

## IV. Analysis

### A. RA and ADA Claims

#### 1. Claims against the Individual Defendants

Counts I, II, and III assert claims under the RA and the ADA. (Doc. 1 at ¶¶ 52-63, 64-74, 75-98). It appears that all such claims have been asserted solely against the Board. For example, Plaintiff alleges that "[t]he Board willfully and intentionally denied my request for accommodation …" and that "[a]ny attempt by the Board to prove that its reasons were legitimate ... will be shown to be pretextual." (*Id*. at ¶¶ 62, 63, 73 & 74). The prayers for relief in Counts I, II, and III likewise are directed toward the Board:

> Declare that the Board committed acts of disability discrimination, in refusing to accommodate me for my disability.
>
> A judgment requiring the Board to reimburse me my salary, and other work benefits I was wrongfully denied from the date of the disability discrimination until the date of judgment[.]
>
> Award of compensatory damages for Defendant's intentional disability discrimination as may be just and proper under the circumstances of this case[.]
>
> Award of special damages for medical expenses caused by the Board's discrimination against me[.]

(*Id*. at p. 13, ¶¶ a. through d.; *id*. at p. 15, ¶¶ g. through j.); and

> Declare that the Board committed acts of unlawful workplace harassment[.]
>
> A judgment requiring the Board to reimburse me my salary, and other work benefits I was wrongfully denied from the date of the unlawful workplace harassment until the date of judgment[.]
>
> Award of compensatory damages for Defendant's unlawful workplace harassment as may be just and proper under the circumstances of this case[.]
>
> Award of special damages for medical expenses caused by the Board's unlawful workplace harassment against me.

(*Id*. at p. 19, ¶¶ m. through p.).

Asserting claims against the Board indeed would be the proper avenue for Plaintiff to seek redress under the RA and the ADA, as the Eleventh Circuit has held that "to impose *official* liability on a government entity amenable to suit, a plaintiff need do no more than name the government entity defendant; it is unnecessary also to name specific agents." *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993) (italics in original). For Plaintiff also to bring RA claims and/or ADA claims against the Individual Defendants in their official capacities thus would be duplicative of her claims against the Board. *See McDowell v. Alabama Dep't of Pub. Health*, No. 2:20-cv-280-JTA, 2022 WL 988377, *3 (M.D. Ala. Mar. 21, 2022) (citing *Ginwright v. Dep't of Revenue for Ala.*, No. 2:12-cv-473-WC, 2013 WL 1187943, *4 (M.D. Ala. Mar. 21, 2013). And it likewise is settled that "there is no individual capacity liability under ... the ADA or RA." *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005); *see also Berkery v. Kaplan*, 518 F. App'x 813, 814-15 (11th Cir. 2013). Accordingly, to the extent Counts I, II, and III potentially could be construed as asserting claims against the Individual Defendants (whether in their official capacities or their individual capacities), such claims are due to be dismissed.

### 2. Claims against the Board

As to the claims asserted against the Board in Counts I, II, and III, the Board first argues that Plaintiff "has failed to establish that she was disabled under ADA or the Rehabilitation Act." (Doc. 52 at p. 5). More specifically, the Board asserts that "[t]he complaint is devoid of allegations that the alleged medical condition from which the plaintiff claims she suffers substantially limits one or more of her major life activities." (*Id.*).

To establish a *prima facie* case under the ADA or the RA, a plaintiff must show (1) that she has a disability, (2) that she is a qualified individual, meaning that she can perform the essential functions of her job, with or without a reasonable accommodation, and (3) that the employer discriminated against her because of the disability. *See, e.g., Greenberg v. BellSouth Telecomms., Inc.,* 498 F.3d 1258, 1263 (11th Cir. 2007). The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more major life activities, (2) a record of such impairment, or (3) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(1). The term "substantially limits" is to be broadly interpreted so as to allow for the greatest coverage. *See* 42 U.S.C. § 12102(4)(A); *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (explaining that the primary object of ADA cases should be to determine whether covered entities have complied with their obligations and whether discrimination has occurred, as opposed to whether an impairment substantially limits a major life activity).

A review of the Complaint reveals the following allegations in regard to a potential disability: "I have a medical diagnosis of severe asthma. This health condition causes my breathing to be restricted and can be exacerbated depending on my environment." (Doc. 1 at p. 4, ¶ 5). The Complaint further details three specific, triggering incidents—mold and mildew conditions in

Plaintiff's classroom (*Id.* at p. 1, ¶¶ 6-7), the general conditions inside the gym (*Id.* at pp. 4-5, ¶¶ 8-9), and a hot classroom (*Id.* at p. 6, ¶¶ 18)—the last of which allegedly caused Plaintiff to pass out and required attention from paramedics.

Although the severity of a plaintiff's asthma must be evaluated in order to determine whether a "disability" exists under the RA and ADA, courts sitting within the Eleventh Circuit have held that asthma can constitute a substantial limitation on the major life activity of breathing. *See Wolfe v. Fla. Dep't of Corr.*, No. 10-0663, 2012 WL 4052334, *2 (M.D. Fla. Sept. 14, 2012); *Brown v. Georgia Dept. of Corr.,* No. 07–0079, 2008 WL 795086, *3 (M.D. Ga. Mar. 4, 2008). *Duncan v. DaVita Healthcare Partners, Inc.*, No. 4:15-cv-00743-SGC, 2019 WL 3779899, *11 (N.D. Ala. Aug. 12, 2019). Indulging the liberal construction afforded to *pro se* pleadings, and accepting the allegations of the Complaint as true, the undersigned finds that Plaintiff has set forth sufficient allegations of a requisite "disability" to permit her to proceed against the Board on Counts I and II. *See also Everett v. Cobb County Sch. Dist.,* 138 F.3d 1407, 1409 (11th Cir. 1998) (explaining that claims for discrimination under the RA are subject to the same analysis as claims under the ADA).

The Board alternatively argues that the Complaint "contains no allegations as to any specific knowledge of the Board of [Plaintiff's] alleged medical condition." (Doc. 52 at p. 5). However, Plaintiff specifically alleges that she informed "Principal Mary Phelan-Jackson … of Brewbaker Middle School that I have a health condition that restricts and limits my breathing[,]" that "I sent an email requesting a room change from a room which had black mildew and mold," and that "I informed in that email that the condition of the room exacerbated my health condition." (Doc. 1 at p. 4, ¶ 6). Plaintiff further alleges that she submitted an "incident report" to Phelan-Jackson about the September 12, 2019 occurrence in the gym and that Phelan-Jackson

acknowledged receipt but informed Plaintiff that she used the wrong form. (*Id.* at p. 5, ¶ 15). Plaintiff thus has sufficiently alleged that she expressed the need for an accommodation to her direct supervisor. *Compare Colclough v. Gwinnett Pub. Sch.*, 734 F. App'x 660, 664 (11th Cir. 2018); *see also* 29 C.F.R. pt. 1630 App. § 1630.9 ("In general ... it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.").

The Board further argues that "Count III of Plaintiff's complaint fails to establish a claim for harassment under the ADA." (Doc. 52 at p. 5). With regard to harassment claims under the ADA, the Eleventh Circuit has stated:

> We have not addressed the availability of a claim for a hostile work environment under either the ADA or the Rehab Act. Where a plaintiff presents a claim based on harassment by a supervisor, she must establish that: (1) she belongs to a protected group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and, thus, creates a discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability. *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (involving Title VII).

*Gilliard v. Georgia Dep't of Corr.*, 500 F. App'x 860, 868-69 (11th Cir. 2012).[3] The Board contends that "the plaintiff being labeled as suicidal and crazy and an isolated incident of the door being closed on the plaintiff is not sufficiently severe or pervasive to alter the terms and/or conditions of her employment." (Doc. 52 at p. 6). However, Plaintiff alleges that Phelan-Jackson, as her direct supervisor and having knowledge of her medical disability, spread rumors about her suicidal status to others including the Board. (Doc. 1 at p. 7, ¶ 25). And Plaintiff alleges that

---

[3] The undersigned observes that the Eleventh Circuit has never gone so far as to affirmatively state that a harassment claim would be cognizable under the ADA and/or the RA. *See Gilliard*, 500 F. App'x at 868; *see also Woodruff v. School Bd. of Seminole County, Fla.*, 304 F. App'x 795, 700 (11th Cir. 2008); *Zalezhnev v. Wonderworld Montessori Academy Corp.*, No. 20-10277, 2021 WL 45530192021, *4 (11th Cir. Oct. 5, 2021). By the same token, no indication has been given that such a claim would not be recognized.

10

Phelan-Jackson subsequently demanded that she enter the gym and then proceeded to shut the door into her so hard that she had to seek medical treatment for her injuries and was on medical leave for months afterward. (*Id.* at p. 17, ¶¶ 86-88). Accepting such allegations as true, the undersigned finds the Complaint sufficient to permit Plaintiff to proceed on Count III.

### B. Section 1983 Claims

In Count IV of the Complaint, Plaintiff asserts a § 1983 claim against "the Board, and the individual Defendants in their official capacities … on the basis of my disability by intentionally refusing to grant my requests for accommodations… ." (Doc. 1 at p. 20, at ¶¶ 100, 101). Plaintiff similarly alleges in Count V that the Individual Defendants in their individual capacities "intentionally and wrongfully discriminated against [her] on the basis of [her] disability and other terms and conditions of employment" in violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1 at p. 22, ¶¶ 105, 106). Specifically, Plaintiff contends that "Defendants refused to grant [her] request for accommodation" (*Id*. at p. 22, ¶ 105) and that "[Defendants] purposefully deprived [her] of clearly established federal statutory and constitutional rights by subjecting [her] to intentional and unlawful discriminatory practices based upon [her] disability" (*Id*. at ¶ 106).[4]

---

[4] Plaintiff mentions the Board once in Count V: "The Board and Defendants, Dr. Ann Roy Moore, Kim Gillis, Dr. John Johnston and Mary Phelan-Jackson, in their individual capacities, under color of state law, in violation of 42 U.S.C. §1983, purposefully deprived me of clearly established federal statutory and constitutional rights by subjecting me to intentional and unlawful discriminatory practices based upon my disability." (Doc. 1 at p. 22, ¶ 106). Such reference to the Board appears to inadvertent, as the third paragraph of Count V is virtually identical to the third paragraph of Count IV that clearly was directed against the Board: "The Board and Defendants, Dr. Ann Roy Moore, Kim Gillis, Dr. John Johnston and Mary Phelan-Jackson, in their official capacities, in violation of 42 U.S.C. §1983, purposefully deprived me of clearly established federal statutory and constitutional rights by subjecting me to intentional and unlawful discriminatory practices based upon my disability." (*Id.* at p. 20, ¶ 101). Moreover, Count V's prayer for relief does not mention the Board or request relief from the Board. The undersigned therefore finds that Count V does not evidence an intention to state a claim against the Board.

As explained in detail as part of the January 25, 2022 Report and Recommendation of the Magistrate Judge (*See* Doc. 39 at pp. 11-13), Plaintiff has not alleged that she was discriminated against because she is a member of a constitutionally protected class.   Therefore, Plaintiff has failed to state an Equal Protection claim based upon her membership in such a protected class. *See Alford v. Consol. Gov't of Columbus, Ga.*, 438 F. App'x 837, 839 (11th Cir. 2011) ("In a traditional employment case brought under the Equal Protection Clause, an employee asserts that he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin.").  Moreover, Plaintiff has expressly disclaimed any claim based upon a "class of one" argument.  (Doc. 50 at p. 3: "Plaintiff Walker has NEVER asserted that she was in a 'Class of One' equal protection claim").  *See also Alford*, 438 F. App'x 839-40 (explaining that class of one equal protection claims are not viable against public employers) (citing *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 594-95 (2008)).

It appears that Plaintiff actually is attempting to predicate a purported § 1983 claim upon rights created by the RA and/or the ADA; however, the Eleventh Circuit has been clear that such claims can only be brought under the RA or the ADA itself:

> [B]oth the Rehabilitation Act and the ADA provide extensive, comprehensive remedial frameworks that address every aspect of Holbrook's claims under section 1983.  To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple.  We conclude that a plaintiff may not maintain a section 1983 action in lieu of-or in addition to-a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA.  *See also Johnson v. Ballard,* 644 F.Supp. 333, 337 (N.D.Ga.1986) (where plaintiff brought section 1983 claim for violation of Title VII, court resolved that "'it would be anomalous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can bypass all of the administrative processes of Title VII and go directly into court under § 1983.'") (quoting *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984)).

*Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 11531 (11th Cir. 1997).  Plaintiff indeed has specifically stated here that her § 1983 claims arise from the allegation that the defendants "purposefully deprived me of clearly established federal statutory and constitutional rights by subjecting me to intentional and unlawful discriminatory practices based upon my disability." (Doc. 1 at p. 20, ¶ 101; *id.* at p. 22, ¶ 106) (emphasis added) (quoted language identical in both paragraphs).  *See also Scott v. Estes*, 60 F. Supp. 2d 1260, 1270 (M.D. Ala. 1999) ("[B]ecause the right to be free from discrimination based on a disability is created solely by statute, Scott's claim of discrimination based on her disability is not actionable under § 1983 and must be dismissed.").

Because Plaintiff has not alleged that she is a member of a constitutionally protected class, and because the basis for her claim appears to be "rights created by the Rehabilitation Act and the ADA," *Holbrook*, 112 F.3d at 1531, Plaintiff cannot maintain a cause of action under § 1983, and Counts IV and V are due to be dismissed as to both the Board and the Individual Defendants.

**V.     Conclusion**

For the reasons stated above, the Magistrate Judge hereby **RECOMMENDS** as follows:

- that the Individual Defendants' Motion for Judgment on the Pleadings (Doc. 48) be **GRANTED** such that all of Plaintiff's claims against the Individual Defendants are **DISMISSED WITH PREJUDICE**;

- that the Board's Motion for Judgment on the Pleadings (Doc. 52) be **DENIED** as to Counts I, II, and III but **GRANTED** as to Count IV and V such that Counts IV and V against the Board are **DIMISSED WITH PREJUDICE**; and

- that this action proceed solely on the claims asserted against the Board in Counts I, II, and III.

It is **ORDERED** that any objections to this Recommendation must be filed no later than August 9, 2023.  An objecting party must identify the specific portion of the factual findings or legal conclusions to which the objection is made and must describe in detail the basis for the objection.  Frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to this Recommendation shall bar a party from a de novo determination by the District Court of any factual findings or legal conclusions contained herein and shall waive the right of the party to challenge on appeal any subsequent order that is based on factual findings and legal conclusions accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

**DONE** this the 26th day of July 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**